### Wickes Lumber v. Hedgerow Manor, Ltd.

*Robert C. Nowalis*, for claimant.
*Joseph J. Musto*, for owner.

TOOLE, *J.*, October 13, 1982—On March 5, 1982, Wickes Lumber (claimant) filed a mechanic's lien action against Hedgerow Manor, Ltd. (owner) for building material supplied under a contract with Giovanni Associates, Inc. (contractor). The owner then filed preliminary objections on April 7, 1982. Claimant's reply to owner's preliminary objections was filed April 28, 1982. This matter was briefed and argued on June 7, 1982, and is presently before the court for determination.

The respective positions of the parties may be summarized as follows. In response to the mechanic's lien filed by claimant the owner presents a three-pronged argument requesting that the mechanic's lien claim be stricken. Initially, the owner cites a waiver of lien filed with the Prothonotary of Luzerne County at no. 225-S of 1981 on May 4, 1981, a copy of which is attached to the preliminary

objections as Exhibit A. Secondly, the owner argues that claimant executed a waiver and release and thus is precluded from securing a lien. Both waivers were executed pursuant to the Mechanic's Lien Law of 1963;* hereinafter referred to as the act. Finally, defendants contend that claimant has failed to give the notice required by 49 P.S. §1501, thereby rendering the claim a nullity.

Claimant argues that the waiver of lien attached to the owner's preliminary objections as Exhibit A is null and void because inter alia, the waiver was executed by Giovanni Assocs. Inc., which entity was not in good faith intended to be a contractor, as that term is defined in the act. It is also admitted that Wickes, through its Wilkes-Barre center manager, executed the release of mechanic's lien, attached to Hedgerow's preliminary objections as Exhibit B, but claimant denies the validity of this document because inter alia, the execution of said release was procured in bad faith and at a time when all parties to this controversy, namely, the owner, an undisclosed agent for a group of Philadelphia investors, and the contractor knew that neither Giovanni nor Hedgerow had the ability or intention to pay for materials purchased from claimant. In response to defendant's argument concerning §1501, claimant contends that he is not required to give any notice since the claim is asserted as a "contractor" as that term is defined in the act.

Initially, we would note that our courts have construed §1505 of the act to permit the waiver of liens issue to be raised by preliminary objections. See, e.g. Q-Dot, Inc. v. Atlantic City Electric Co., 289 Pa.

---

*Act of August 24, 1963, P.L. 1175, no. 497, 49 P.S. §1101, et seq.

Superior Ct. 155, 432 A. 2d 1098 (1981); John B. Kelly, Inc. v. Phoenix Plaza, Inc., 249 Pa. Superior Ct. 413, 417 n. 5, 378 A. 2d 363, 365 n. 5 (1977); Mar Ray, Inc. v. Schroeder, 242 Pa. Superior Ct. 14, 16 n. 2, 363 A. 2d 1136, 1137 n.2 (1976).

Sec. 1407 of the act is entitled "Contract not made in good faith, effect." It states:

"A contract for the improvement made by the owner with one not intended in good faith to be a contractor, shall have no legal effect except as between the parties thereto, even though written, signed and filed as provided herein, but such contractor, *as to third parties, shall be treated as the agent of the owner. . . . "* (Emphasis supplied.)

Wickes contends that for the purposes of this proceeding they need only prove that Giovanni was not intended in good faith to be a contractor (Plaintiff's brief, p. 8). The owner argues that both itself and the contractor are separate entities which have been properly incorporated under the law of the State of Pennsylvania, and as such, it is well settled that the courts will not disregard such entity absent a showing that the corporation was used for the perpetration of fraud, or as a means to justify a wrong, or that the corporate assets were illegally used for the benefit of the controlling party (Defendant's brief, pp. 2-3). In effect, the owner argues that claimant's allegations are insufficient to "pierce the corporate veil."

For the reasons which will be set forth below, we hold that Wickes has stated a cognizable claim under sec. 1407 of the act.

In Lastooka v. Poinsettia Garden, Inc., 50 West 13 (1967), preliminary objections were filed by the owner and contractor raising issues closely paralleling those presently before this court. Defendants

argued that since waivers were executed between the owner and the contractor and between claimant-subcontractor and the contractor, the subcontractor's claim should be dismissed. In response, claimant argued that the no-lien contract was not entered into in good faith and therefore the alleged waiver would be ineffective as to claimant. After examining sec. 1407, the court concluded: (50 West at 17)

" . . . there is a substantial issue of fact to be decided by a jury as to the good faith of the Owner and Contractor who signed the Waiver of Mechanic's Lien. The Jury could well find that the Waiver was entered into as a mere device to deny subcontractors and materialmen of a legitimate right to lien the property upon which the work was performed and to which the material was supplied."

We find the court's reasoning and conclusions dispositive of the instant controversy as it relates to the waiver executed between Giovanni and Hedgerow Manor, Ltd. As between claimant and the contractor, Latsooka concluded that the agreement executed between the parties did not contemplate a waiver. In Stringert & Bowers, Inc. v. On-Line Systems, Inc., 236 Pa. Superior Ct. 196, 345 A. 2d 194 (1975) (Watkins dissenting), the court considered the effect of a release executed by a claimant in a position analagous to that of Wickes in the instant case. In framing the issue before it, the court stated (345 A. 2d at 196):

"Here, we are called upon to resolve a conflict between the party allegedly defrauded and the party guilty of committing the fraud."

Relying on the Pennyslvania Supreme Court's decision in Toll v. Beckerman, 299 Pa. 1, 148 A. 904

(1930), the court held that an agreement by the subcontractor to waive a mechanic's lien obtained through the owner's fraud, cannot be asserted to prevent the subcontractor from filing a lien claim.

Additionally, we would note that our holding does not "take lightly the separate nature of corporate entities." Rather, we are merely implementing a statutory schema enacted to specifically deal with the type of issue confronting this court. In Foggia Bldrs. v. RJD Construction Co., 75 D. & C. 2d 170 (1975), the court addressed a similar argument. The Foggia Court cited Dries Building Supply Co. v. Dreas, 33 Lehigh 147 (1968):

"Under the law of Pa., a corporation is a separate entity, which will not be disregarded merely because the stock is closely held. There must be present some item of unfairness, injustice or some compelling public policy before the corporate entity will be set aside. . . . " 33 Lehigh at 153.

Relying on the above quoted language, the court, in Foggia held (75 D. & C. 2d at 173.):

"In the case at bar, *there is no allegation of bad faith, fraud or any misleading or the like on the part of defendant.* We, therefore, find that the waiver agreement is binding upon the plaintiff and that the property in question is immune from lien." (Emphasis supplied.)

Implicit in the court's holding is that should there have been such allegations, the waiver agreement would not be binding. Since the pleadings present evidence both in support of and against the averments in the claim, we believe the appropriate resolution of this dispute is for the jury.

We now turn to defendant's argument regarding failure to comply with the appropriate rules con-

cerning notice of the intent to file a mechanic's lien.

Defendant argues that plaintiff's claim is defective because no preliminary notice of the intention to enter the claim was given to Hedgerow Manor as owner, as required by sec. 1501 of the act. In order to perfect a mechanic's lien, the subcontractor is required to strictly comply with the notice provisions of sec. 1501(a) and (b). There are no similar requirements for contractors. Wickes contends that it is asserting its claim as a contractor, and therefore it is not required to comply with the provisions of the aforementioned section. The explanation of the terms contractor and subcontractor is set forth in Art. II of the act.

§ 1201(4) "Contractor" means one who, by contract with owner, . . . .

§ 1201(5) "Subcontractor" means one who, by contract with the contractor, . . . .

An examination of the above cited definitions yields but one conclusion. In order to distinguish between a contractor and a subcontractor, one must look to the contracting parties. Very simply, one who contracts with the owner is a contractor, one who does not is not.

Because the law thrusts upon the contractor the mantle of owner's agent, the contract between Wickes and Giovanni is treated as one between Wickes and Hedgerow. Since § 1501 has no applicability to contractors, Wickes is not required to provide preliminary notice.

## ORDER

It is ordered, adjudged and decreed that defendant's preliminary objections are overruled.